(November 27, 1899.)

IN RE PAUL CORCORAN.

[59 Pac. 18.]

HABEAS CORPUS—GRAND JURY.—In an application for a writ of *habeas corpus,* the matter of the drawing, summoning and impaneling of the grand jury, which found indictment under which the petitioner was convicted, are not proper matters for consideration, such questions being subject to review only on appeal or writ of error.

SAME.—In this case the objections raised to the legality of the grand jury examined and held to be untenable.

CRIMINAL LAW—SECTION 8500 OF THE REVISED STATUTES NOT REPEALED.—The provisions of section 8500 of the Revised Statutes, providing for the sentence of persons convicted of crimes punishable by imprisonment in the state penitentiary has not been repealed or modified by subsequent legislation.

(Syllabus by the court.)

Original proceeding in supreme court. Application for writ of *habeas corpus*.

P. Reddy and Alfred A. Fraser, for Petitioner.

The judgment in this case is void, for the reason that in addition to the punishment provided by law for the offense, he was sentenced to seventeen years at hard labor. A judgment in excess of that provided by law is absolutely void. (*Ex parte Cox*, 3 Idaho, 530, 32 Pac. 197; *Ex parte Yarbrough*, 110 U. S. 651, 4 Sup. Ct. Rep. 152; *People v. Liscomb*, 60 N. Y. 559, 19 Am. Rep. 211; *Ex parte Bernert*, 62 Cal. 524; *Ex parte Lange*, 18 Wall. 163; *Ex parte Wilson*, 114 U. S. 417, 5 Sup. Ct. Rep. 935; *Ex parte Page*, 49 Mo. 291; *Ex parte Nielsen*, 131 U. S. 176, 9 Sup. Ct. Rep. 672.)

S. H. Hays, Attorney General, W. E. Borah, Hawley & Puckett and J. H. Forney, for the State.

Under provisions of section 3961 the court may, for good cause, discharge regularly drawn and summoned jurors, and order open venire for jurors to try the cause at the term for which juros were regularly drawn. (*Simmons v. Cunningham*, 4 Idaho, 426, 39 Pac. 1109.) To the same effect are the following authorities: *People v. Durrant*, 116 Cal. 179, 48 Pac. 75; *Babcock v. People*, 13 Colo. 515, 22 Pac. 817; *Chartz v. Territory* (Ariz.), 32 Pac. 166; *Macky v. People*, 2 Colo. 13; *State v. King*, 9 Mont. 445, 24 Pac. 265. We think the provision of the statute directing the ordering of the grand jury by the court, although it contains the word "must," is simply directory to the court, and if for any reason it is not done, the other provision of the statute may be followed. (*State v. Krug*, 12 Wash. 288, 41 Pac. 127; *Weeks v. State*, 31 Miss. 490; *Johnson v. State*, 33 Miss. 363; *State v. Smith*, 67 Me. 328.) The errors claimed, even if they existed, were not jurisdictional, and mere errors and irregularities will not be inquired into on a hearing of this kind. Errors in summoning a grand jury will not be considered on *habeas corpus*. (*In re Betts*, 36 Neb. 282, 54 N. W. 524; *Ex parte Warris*, 28 Fla. 371, 9 South. 718; *Ex parte Springer*, 1 Utah, 214.) The grand jury was at least a *de facto* body, and its

acts cannot be questioned here. (*State v. Noyes*, 87 Wis. 340·, 41 Am. St. Rep. 45, 58 N. W. 386, 27 L. R. A. 776; *State v. Marsh*, 13 Kan. 596; *Sage v. State*, 127 Ind. 15, 26 N. E. 667; *In re Gannon*, 69 Cal. 541, 11 Pac. 240; *State v. Belvel*, 89 Iowa, 405, 56 N. W. 545; *People v. Reigel*, 120 Mich. 78, 78 N. W. 1017; *Ex parte Twohig*, 13 Nev. 302; *State v. Petrea*, 92 N. Y. 128.) Assuming that the judgment is erroneous as to the provision for hard labor, still it can only be corrected upon a writ of error, and in no event is the defendant entitled to a release under a writ of *habeas corpus*. (*United States v. Pridgeon*, 153 U. S. 631, 14 Sup. Ct. Rep. 746; *Ex parte Bond*, 9 S. C. 80, 30 Am. Rep. 20; Church on Habeas Corpus, sec. 372.) It is held that, although the court might have rendered an erroneous judgment, such as imposing hard labor, when not allowed, or rendered a severer sentence than allowed, still these things must be corrected by an appeal or writ of error, and cannot be considered on a writ of *habeas corpus*. (*In re Graham*, 74 Wis. 450, 17 Am. St. Rep. 174, 43 N. W. 148; *Sennott's Case*, 146 Mass. 489, 4 Am. St. Rep. 344, 16 N. E. 448; *Ex parte Ryan*, 17 Nev. 139, 28 Pac. 1040; *In re Swan*, 150 U. S. 637, 14 Sup. Ct. Rep. 225; *Ex parte Gibson*, 89 Ala. 174, 7 South. 833; Church on Habeas Corpus, sec. 372; *In re Paschal*, 56 Kan. 123, 42 Pac. 373; *Ex parte Max*, 44 Cal. 579; *State v. Sloan*, 65 Wis. 647, 27 N. W. 616; *People v. Jacobs*, 66 N. Y. 8; *Ex parte Gibson*, 31 Cal. 628, 91 Am. Dec. 546; *People v. Liscomb*, 60 N. Y. 559, 19 Am. Rep. 211; *People v. Kelley*, 97 N. Y. 213; *Elsner v. Shrigley*, 80 Iowa, 30, 45 N. W. 393; *Ex parte Lange*, 18 Wall. 163; *In re Graham*, 138 U. S. 461, 11 Sup. Ct. Rep. 363; *In re Taylor*, 7 S. Dak. 382, 58 Am. St. Rep. 843, 64 N. W. 253; *Ex parte Arras*, 78 Cal. 304, 20 Pac. 683.)

HUSTON, C. J.—The petitioner was convicted of murder in the second degree, and sentenced to confinement in the state penitentiary at hard labor for the period of seventeen years. Application is made for a writ of *habeas corpus*, which application is based upon several grounds. The jumbled, incoherent, and repetitive manner in which the grounds upon which the writ is asked are stated in the briefs of counsel for the petitioner renders it somewhat difficult to treat or consider them

*seriatim.* We will therefore consider them as they appear to us in the briefs of counsel.

The primary contention is, as set forth in the principal brief, "that the judgment and sentence is void, because the court never acquired jurisdiction of the person of defendant, or of the offense set forth in the judgment and commitment"; and this, because, as is contended, the grand jury which found the indictment upon which the petitioner was tried and convicted was not summoned and impaneled as required by law. In support of this position, petitioner's counsel set forth the proceedings of the court in the matter of summoning the grand jury, as the same appears in the record, which is as follows:

"In the Matter of Drawing and Summoning a Grand Jury."

"It satisfactorily appearing to the court that a grand jury will be required at this term of court, and that the same has not been drawn or summoned to attend, it is therefore ordered that the coroner, and acting sheriff of said county summon, as provided by law, twenty good and lawful men of this county to be and appear at the courthouse of said county, at Wallace, at 2 o'clock P. M., on June 12, A. D. 1899.

"Done in open court, this eighth day of June, A. D. 1899.

(Signed)    "GEORGE H. STEWART,

"Judge."

It should be stated *in limine* that it is shown, both by the return to the writ of *habeas corpus* herein, as well as by public records, of which we take judicial notice, that at the general election held in November, 1898, the county seat of Shoshone county was, by vote of the qualified electors of said county, changed from the town of Murray, to the town of Wallace, and that the jury, which counsel for petitioner claims had already been drawn, was drawn at the town of Murray, after such removal of the county seat to the town of Wallace. The law provides that the jury shall be drawn at the office of the clerk, which is required to be kept at the county seat, and, the law not having been complied with in the drawing of such jury, the statement of the district judge in his order that no jury had been drawn was entirely correct. It is contended by counsel

for the petitioner that "the court had no power or authority to make such order, and it was therefore null and void."

Section 3952 of the Revised Statutes, as the same stood prior to the amendatory act of February 7, 1899 (see Idaho Sess. Laws, 1899, p. 335), was as follows: "Not less than fifteen nor more than thirty days before the commencement of any term of the district court, the judge thereof, if a jury will be required therefor, must make and file with the clerk an order that one be drawn. The number to be drawn must be fixed in the order; if to form a grand jury, it must be twenty, and if a trial jury, such number as the judge may direct." By the amendatory act referred to, said section was made to read as follows: "The district court or the judge thereof, if a jury will be required at any term of the district court, must make and file with the clerk an order that one be drawn. The number to be drawn must be fixed in the order; if to form a grand jury, it must be twenty, and if a trial jury, such number as the judge may direct." It will be seen that the only change made in the section by this amendment is the elimination therefrom of the time within which such order must be made, to wit: "Not less than fifteen nor more than thirty days before the commencement of any term of the district court." The purpose and intent of the legislature in the enactment of this amendment is palpable, and yet counsel for petitioner most vehemently contends that this amendatory act repealed section 3961 of the Revised Statutes. This latter section is as follows: "Sec. 3961. Whenever jurors are not drawn and summoned to attend any court of record, or a sufficient number of jurors fail to appear, such court may, in its discretion, order a sufficient number to be drawn and summoned to attend such court; or it may, by order entered on its minutes, direct the sheriff of the county to summon so many good and lawful men of his county to serve as jurors as the case may require. And in either case such jurors must be summoned in the manner provided by the preceding section." This contention of counsel rests entirely upon the assumption that section 2 of the amendatory act provides that "all acts and parts of acts in conflict with this act are hereby repealed," and that the provisions of section 3961 are

in conflict with section 3952 as amended. It will hardly be contended, we apprehend, that there was any conflict between section 3952 and section 3961 before the amendatory act was passed, and how the amendment, which consists solely of striking out from said section of the time within which the order of the court directing the drawing of the jury should be made, can create a conflict is entirely beyond our comprehension.

This whole question was before this court in the case of *Simmons v. Cunningham,* 4 Idaho, 426, 39 Pac. 1109; and the action of the district court in that case was sustained. The conditions existing in Shoshone county at the time of the trial in *Simmons v. Cunningham;* or at the commencement of the term at which said trial was had, were, only in a lesser degree, the same as existed at the opening of the term at which the petitioner was tried and convicted; and the court, upon petition of the bar of Shoshone county, adjourned the term from July 7th to July 16th, and discharged all jurors theretofore drawn for such term. On the convening of the court; on July 16th, a venire was issued, as provided in section 3961, and this action of the district court was affirmed by this court. In the case at bar a much more serious condition of affairs existed. For a period of some eight years the organization known as the "Miners' Union" had had almost absolute control of the affairs of Shoshone county; the election of all officers of the county had been controlled by that organization; all business was subject to their domination and dictation; crimes of the most heinous character had been committed with impunity; and so intimidated had been the law-abiding portion of the county, who were vastly in the minority, that any investigation of such crimes was practically impossible. That this condition of things had existed from 1892 is matter of history. It is also matter of history that on April 29, 1899, a mob of something about one thousand in numbers, composed of members of the organization known as the "Miners' Union," and many of whom were masked, coming from the various mining camps in said county, overpowering the railroad employees, came by train to Wardner Junction, in said county, destroyed several hundred thousand dollars of property, and committed two mur-

ders.   The county commissioners, the sheriff, and the prosecuting attorney of said county were notoriously known to be, if not members of said organization, openly in sympathy with them.   On May 4, 1899, such was the condition of things in said Shoshone county, by reason of the unlawful, treasonable, and murderous acts of said organization known as the "Miners' Union," and the members thereof, that the governor of Idaho issued his proclamation, declaring said Shoshone county in a state of insurrection, and calling upon the federal government for aid in the maintenance of the law therein.   At the convening of the district court in said Shoshone county, on the eighth day of June, 1899, the district judge found the officers of said county heretofore named under arrest by the military authorities.   It is for one of the murders committed by said mob on the twenty-ninth day of April, 1899, that the petitioner was indicted and convicted.   Under the conditions above described, the district court ordered a jury to be summoned under the provisions of section 3961 of the Revised Statutes, and this action of the district court we consider legal, proper, and highly commendable.   We might have disposed of so much of this case upon the ground that none of these questions involving the drawing, summoning, and impaneling of the grand jury are properly inquirable into upon an application for a writ of *habeas corpus*.   We have not, however, done so, but have preferred rather to examine the questions raised by counsel for petitioner, notwithstanding what appeared to us their frivolous and utterly untenable character.

It seems to be one of the methods of this organization known as the "Miners' Union," whenever an attempt is made to bring them to account for their unlawful, barbarous, and murderous acts, to at once commence an attack upon the legally constituted authorities who are endeavoring to enforce and maintain the law, and by their false clamor seek to excite sympathy for the malefactors; and such action, by virtue of the recognized "freedom of the press" in this country, always finds an echo, and too frequently indorsement, with that portion of the press whose moral principles are governed and controlled by what is

for their gain. Thousands of miles from the scene of the transactions they assume to judge and criticise. These "leading journals of civilization" hesitate not, upon no other authority than the lurid reports of their "scoop" friends, based upon the statements of known malefactors and their advocates and defenders, to assail indiscriminately the legally constituted authorities of a community or state for their efforts to maintain the law, and protect persons and property, within their jurisdiction. In keeping with this custom and rule, both the executive and judiciary of the state have been assailed in terms of unmeasured vituperation for simply doing their duty under their oath of office.

We have not attempted to, nor do we deem it essential that we should follow counsel through all the vagaries of a voluminous brief wherein they seek to establish their contention that the grand jury which found the indictment under which the petitioner was convicted was not a legal body. We have shown that said grand jury was a legal body, duly summoned and impaneled under the statutes of Idaho and with that we are, and counsel must be, content.

It is further contended by counsel for petitioner that the judgment and sentence of the district court is void for the reason that it subjects the petitioner to "confinement at hard labor" in the state penitentiary. Section 8500 of the Revised Statutes of Idaho, is as follows: "The penitentiary building erected and conducted by the United States, in the county of Ada, is the territorial prison of the territory of Idaho, wherein must be confined for reformation and punishment, and employed at hard labor, all offenders convicted and sentenced according to law to imprisonment in the territorial prison; and all persons convicted of crime against the laws of this territory and sentenced to confinement in the territorial prison must be sentenced to hard labor during the term of their confinement and must perform such labor under such rules and regulations as may be prescribed by the governor of the territory, the United States marshal and the territorial treasurer; and they may make regulations for working pris-

oners outside of the prison walls between sunrise and sunset."
The first legislature under statehood enacted a law for the
government and management of the state penitentiary, the
penitentiary building theretofore erected and conducted by the
United States having been transferred to the state by the fed-
eral government. (See Sess. Laws 1891, p. 21.) The legis-
lature of Idaho, at its session in 1893, amended sections 2
and 15 of the act of the first session (see Sess. Laws, 1893,
p. 155); but neither the act of 1891 nor the act of 1893 at-
tempted or did not affect the provisions of section 8500 of the
Revised Statutes, in regard to the matter under consideration,
nor is there anything in either of those acts which conflicts
with the provisions of section 8500 of the Revised Statutes,
directing the form of sentence to be passed upon persons con-
victed of crimes punishable by imprisonment in the state peni-
tentiary, and the same may be said of the amendatory acts of
1899. Those acts do not treat of, or in any way allude to
or impinge upon, the provisions of section 8500 of the Revised
Statutes, under consideration. The amendment referred to
by counsel as having been enacted March 9, 1899, refers to
certain sections of the law of 1891 and the acts amendatory
thereof, and is as follows:

"Section 1. That section seven (7) of an act entitled 'An
act to provide for the government and maintenance of the
penitentiary and for the care and custody of state prisoners,'
approved February 2, 1899, be amended to read as follows:
'Sec. 7. The board shall have authority to use the labor of the
convicts in the erection of a wall around the penitentiary build-
ings and grounds, and in the construction of irrigating and
water ditches for the purpose of bringing water upon said peni-
tentiary grounds as in the opinion of said board may be neces-
sary for the proper cultivation of said grounds and in mak-
ing such other improvements and repairs to said buildings and
grounds as they may deem proper and necessary, and in the
performance of any labor in and about or in connection with
the said penitentiary and penitentiary grounds or lands or
works necessary for the improvement thereof.'

"Sec. 2. All acts and parts of acts in conflict with this act are hereby repealed."

All of this legislation refers to the control, government, and management of the state penitentiary, and to that only; never in the remotest degree alluding to the form of sentence to be inflicted by the court before which a defendant has been convicted. Section 8500 was continued in force by the provisions of the constitution, there being nothing in said section that conflicts with said instrument.

That the court will not, upon an application for a writ of *habeas corpus,* consider the question of drawing, summoning, and impaneling of the grand jury which found the indictment upon which the party was convicted, is, we think, well settled. (*In re McElroy,* 10 Kan. Ap p.348, 58 Pac. 677, and cases there cited.) After a most careful and thorough examination and consideration of the record in this case and of the briefs of counsel, we are unable to find any grounds for the granting of the writ prayed for in the petition, and the same is therefore denied.

Quarles and Sullivan, JJ., concur.